**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**GENERAL PARTS DISTRIBUTION LLC,**

    **Plaintiff,**

vs.                                                                                        Case No.: 8:13-CV-2500-T-23EAJ

**WILLIAM ENRIGHT,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff General Parts Distribution LLC's ("Plaintiff's") **Motion for Preliminary Injunction and Incorporated Memorandum of Law** (Dkt. 3). Defendant William Enright's ("Defendant's") **Defendant's Opposition to Motion for Preliminary Injunction** (Dkt. 14),[1] **Defendant's Motion to Strike Affidavit of Javier Acosta in Support of Plaintiff's Motion for Preliminary Injunction and Incorporated Memorandum of Law** (Dkt. 21), and **Plaintiff's Response to Defendant's Motion to Strike Affidavit of Javier Acosta in Support of Plaintiff's Motion for Preliminary Injunction** (Dkt. 26). A hearing has been held. For the following reasons, it is recommended that the motion for preliminary injunction be denied.[2]

---

[1] On September 30, 2013, Plaintiff's motion for preliminary injunction was referred to the undersigned. (Dkt. 5)

[2] Defendant challenges Plaintiff's Affidavit of Javier Acosta (Dkt. 20 Ex. 1) as untimely; the affidavit may well be untimely since Plaintiff filed the affidavit on October 31, 2013, twenty-two (22) days after the October 9, 2013 deadline set in this Court's order on October 3, 2013 and eight (8) days after Defendant's affidavit was filed. Plaintiff contends it was confused about the deadlines as the hearing was continued. However, in the interest of justice the Court has considered the affidavit in ruling on Plaintiff's motion for preliminary injunction, and Defendant's Motion to Strike Affidavit of Javier Acosta (Dkt. 21) is denied. Additionally, the Verified Complaint (Dkt. 1) contains many of the same allegations as the Acosta affidavit.

**I. Background**

On September 27, 2013, Plaintiff, an automotive parts dealer which sells and supplies automotive parts and products through CarQuest Auto Parts stores, filed a Verified Complaint alleging breach of contract and seeking injunctive relief against Defendant, Plaintiff's former employee. Plaintiff moves the Court to enforce the restrictive covenant contained in Enright's Stock Eligible Teammate - Participation Agreement ("Agreement") by prohibiting Defendant from working at an O'Reilly Auto Parts ("O'Reilly") location in the same state as the location where Defendant worked for Plaintiff and to prohibit Defendant from working for O'Reilly in a position that would permit Defendant to use or disclose Plaintiff's confidential information or trade secrets in the same state as the location where Defendant worked for Plaintiff. (Dkt. 1, 3)  Plaintiff also seeks to enjoin Defendant from contacting current employees of Plaintiff to induce the current employees to leave Plaintiff's employment, to enjoin Defendant from using or disclosing Plaintiff's confidential information or trade secrets, to enjoin Defendant from soliciting any of Plaintiff's customers, and to require Defendant to return to Plaintiff any of Plaintiff's confidential information or trade secrets that Defendant has in Defendant's possession, custody, or control. (Id.)

On November 13, 2013, the parties filed a joint pre-evidentiary statement. (Dkt. 27) On November 18, 2013, a hearing was held on  Plaintiff's Motion for Preliminary Injunction (Dkt. 3) and Defendant's Motion to Strike Affidavit of Javier Acosta in Support of Plaintiff's Motion for Preliminary Injunction and Incorporated Memorandum of Law (Dkt. 21).  At the hearing, Plaintiff announced it would narrow the geographic scope of the restrictive Covenant Not to Compete and the Covenant Not to Solicit to the city limits of Dunedin, Florida and a 15 mile radius from the Dunedin city limits for purposes of the preliminary injunction.

**Findings of Fact**[3]

1. Plaintiff, General Parts Distribution LLC, is a North Carolina Limited Liability Company.

2. Plaintiff owns CarQuest Auto Parts, through which Plaintiff sells automotive parts across the country to retail and wholesale customers.

3. Defendant has approximately 30 years of experience in the automotive parts supply industry. Since the 1980s Defendant has worked for a variety of automotive parts dealers and automobile dealerships in Florida, including Ace Auto Parts in Dunedin, Florida, NAPA Auto Parts in St. Petersburg, Florida, Stego Auto Parts, Tires Plus, Dimmett Cadillac in Clearwater, Florida, Kenyon Dodge in Clearwater, Florida, and Stone Buick in Clearwater, Florida. Defendant also worked for Big A Auto Parts in Muncie, Indiana.

4. In mid-January 2006, Plaintiff hired Defendant to work at Plaintiff's Tampa, Florida store as a Commercial Service Teammate or counterperson.

5. Defendant was promoted to a Store Manager position at Plaintiff's store in Oldsmar, Florida sometime during 2006.

6. In 2009, Defendant transferred to Plaintiff's CarQuest store located at 1688 Main Street, Dunedin, Florida where he worked as Store Manager until the end of Plaintiff's employment of Defendant on August 5, 2013.[4]

7. As store manager, Defendant's responsibilities for Plaintiff's Dunedin store included developing and maintaining business or commercial relationships with customers, providing

---

[3] The findings of fact are based on the undisputed facts or, where disputed, the preponderance of credible evidence.

[4] Any factual dispute regarding whether Defendant was fired or resigned is not material to the motion for preliminary injunction.

leadership and direction, tracking and monitoring sales activities, and promoting sales.

8. On November 8, 2012, Defendant purchased 305 shares of Plaintiff's stock online; in order to purchase the stock, Defendant signed Plaintiff's Stock Eligible Teammate - Participation Agreement.

9. Plaintiff drafted the Stock Eligible Teammate - Participation Agreement.

10. The Agreement contains three restrictive covenants: covenants not to disclose, compete, or solicit.

11. The Agreement also has a choice of law provision stating: "GOVERNING LAW. This Agreement shall be performed and enforced in accordance with, and governed by the laws of the State of North Carolina, or the state of my employment at the time I leave my employment with the Company, without giving effect to the principles of conflicts of law."

12. The Agreement's Covenant Not to Disclose states:

> I have executed an Employee Confidentiality Agreement and I covenant to abide by the terms of that agreement and not to disclose Confidential Information and trade secrets, as defined in and provided for in that agreement, including, but not limited to, financial data, pricing, customers, customer list, and customer purchasing history, while I am employed and after my employment ends.

13. The Agreement's Covenant Not to Compete states:

> I agree that for a Time Period of 12 months after my employment at the Company ends, whether voluntary or involuntary, I will not, directly or indirectly, as an employee, consultant or contractor, alone or in conjunction with any other person, business or entity, for my own behalf or on behalf of any other person, business or entity provide (or direct or assist others in providing) (a) services or duties substantially similar or related to the services or duties I performed for the Company or (b) services or duties that would require or permit me to use or disclose Confidential Information, for or on behalf of a person, business or entity in competition with the Company ("Competing Business") in the automotive aftermarket industry, including, but not limited to, Advance Auto Parts, Inc., AutoZone,

> Inc., Genuine Parts, Inc. (NAPA), O'Reilly Automotive, Inc., The Pep Boys and Aftermarket Auto Parts Alliance in the protected territories of i) the States/Commonwealths and/or Territories in which I have been located and employed and/or for which I have had responsibility for the twelve (12) months immediately preceding the end of my employment; ii) the States/Commonwealths and/or Territories in which the Competing Business conducts business; iii) the State of North Carolina; iv) the State of Georgia; v) the State of Missouri; vi) the State of Tennessee and vii) the Commonwealth of Virginia.

14. The Agreement's Covenant Not to Solicit states:

    > I agree that for a Time Period of 12 months after my employment at the Company ends, whether voluntary or involuntary, a) I will not solicit, interfere with, encourage or endeavor to cause any employee to cease his or her employment and b) I will not solicit business from the Company's customers or induce or attempt to induce any customer of the Company to cease doing business with the Company or do business with a Competing Business or competitor of the Company.

15. After Defendant's employment with Plaintiff ended, Defendant started working as Store Manager at the O'Reilly Auto Parts store located at 1433 Main Street, Dunedin, FL 34689, a few blocks away from the Dunedin Carquest store owned by Plaintiff.

16. O'Reilly Auto Parts is an automotive parts supply business and has store locations across much of the United States. It competes for business with the Dunedin, Florida CarQuest store.

## Conclusions of Law

To obtain a preliminary injunction, the moving party must demonstrate "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." Grizzle v. Kemp, 634 F.3d 1314, 1320 (11th

Cir. 2011) (citation omitted).  Given the "extraordinary and drastic" nature of preliminary injunctions, relief may be granted only where the plaintiff clearly satisfies the burden of persuasion as to each of these requirements.  <u>All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.</u>, 887 F.2d 1535, 1537 (11th Cir. 1989).

1.  Likelihood of Success on the Merits

    **A.  Covenant Not to Compete**

Contending that the Agreement is enforceable as a restrictive covenant pursuant to Florida Statute § 542.335, Plaintiff argues that it is substantially likely to prevail on this claim, especially as geographically narrowed for purposes of a preliminary injunction to the city of Dunedin, FL and a fifteen mile radius surrounding Dunedin.  Defendant asserts that Plaintiff cannot establish a likelihood of success on the merits because North Carolina law should apply.  Defendant also maintains that the Agreement lacks consideration, the Covenant Not to Compete is overly broad and unreasonable, and that the Court cannot modify the covenant as Plaintiff requests.

The Agreement's choice of law provision is confusing and ambiguous, stating that the governing law is either the law of North Carolina or the law of the state in which the defendant was employed – here, Florida.  Plaintiff drafted the Agreement and there is no parole evidence regarding the intention of the parties.

Florida and North Carolina law differ on the requirements to prove the existence of a valid restrictive covenant.  It is not clear that Plaintiff has satisfied either state's requirements.  Under North Carolina law, a covenant not to compete is valid and enforceable if it is: (1) in writing; (2) made a part of the employment contract; (3) based on valuable consideration; (4) reasonable as to terms, time, and territory; and (5) not against public policy.  <u>Precision Walls, Inc. v. Servie</u>, 568 S.E.2d 267, 272 (N.C. App. 2002) (citing <u>Triangle Leasing Co. v. McMahon</u>, 393 S.E.2d 854, 857

(N.C. 1990)). Unlike Florida law, North Carolina does not permit the Court to rewrite a contract to conform the restraints to reasonableness; distinctly separable provisions that are unreasonable may be struck out, Hartman v. W.H. Odell & Assoc., Inc., 450 S.E.2d 912, 920 (N.C. Ct. App. 1994) (citing Whittaker General Medical Corporation v. Daniel, 379 S.E.2d 824, 828 (N.C. 1989)), but a court may not otherwise rewrite an unreasonable covenant. Hartman, 450 S.E.2d at 917 (citing Beasley v. Banks, 368 S.E.2d 885, 886 (N.C. Ct. App. 1988)).

It is also unclear whether the Agreement is based on valid consideration. While covenants entered in connection with new employment provide valid consideration in the mutual promises between employer and employee, "a covenant entered into *after* an employment relationship already exists must be supported by new consideration, such as a raise in pay or a new job assignment." Reynolds and Reynolds Co. v. Tart, 955 F. Supp. 547, 553 (W.D.N.C. 1997) (citing Worth Chemical Corp. v. Freeman, 261 N.C. 780, 136 S.E.2d 118 (1964). Although Plaintiff asserts that the consideration was the ability to purchase stock in exchange for signing the Agreement, such alleged consideration may be illusory. Prior to signing the Agreement, Defendant received multiple letters indicating he was already eligible to purchase Plaintiff's stock. (Dkt. 14 Ex. 1 at 8) The ability to purchase stock may not be true consideration for an employee signing the Agreement if an employee were told he was already eligible before signing the Agreement.

Under Florida law, to establish that a restrictive covenant is enforceable, the plaintiff must "prove the existence of one or more legitimate business interests justifying the restrictive covenant," Fla. Stat. § 542.335(1)(b), and "that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." Fla. Stat. § 542.335(1)(c). Florida Statute § 542.335(1)(c) specifically allows a court to modify a restraint to grant only the relief reasonably necessary to protect the legitimate business interests alleged. Once

7

these elements are proven, irreparable injury is rebuttably presumed. Fla. Stat. §542.335(1)(j). See also Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1231 (11th Cir. 2009).

Here, Plaintiff identifies the protection of its confidential business information, relationships with prospective and existing customers and employees, and goodwill as legitimate business interests; Plaintiff has not substantiated these interests. Among other things, Defendant denies being aware of a "Key Accounts" list containing confidential customer and pricing information, contends that Plaintiff's pricing information is publicly listed on Plaintiff's website, denies taking any information regarding Plaintiff's pricing, has no specific recollection of the prices Plaintiff charged, and asserts that Plaintiff's own employees informed clients of Defendant's new employment at O'Reilly's. (Dkt. 14 Ex. 1 at 7-11) See GPS Industries, LLC v. Lewis, 691 F. Supp. 2d 1327, 1335 (M.D. Fla. 2010) (explaining that "[t]he mere identity of clients and pricing terms . . . may not be sufficient to justify a restrictive covenant," especially where the plaintiff did not show reasonable efforts to maintain the secrecy of customer and pricing lists, and where the plaintiff did not show how keeping such lists secret would give economic benefit to plaintiff).

Even if the Covenant Not to Compete satisfies the new consideration requirement of North Carolina law or the legitimate business interest requirement of Florida law, it suffers from serious overbreadth problems. The language of part (a) of the Covenant Not to Compete does not limit the restriction to any geographic area or any type of business or industry and thus appears to prohibit Defendant from working as a store manager for any store anywhere in the world for the stated twelve month period. The geographic restriction in part (b) of the Covenant Not to Compete is also clearly overbroad. "Where the alleged primary concern is the employee's knowledge of the customers, 'the territory should only be limited to areas in which the employee made contacts during the period of his employment.'" Hartman, 450 S.E.2d at 917 (quoting Manpower of Guilford

County, Inc. v. Hedgecock, 257 S.E. 2d 109, 114-115 (N.C. Ct. App. 1979)  Here, the restriction prohibits Defendant from obtaining employment from a nonexclusive list of competing businesses which have locations across the United States; such restriction may serve to prohibit Defendant from practicing his trade throughout much of or even the entire United States.

For purposes of preliminary injunctive relief Plaintiff proposes an even narrower scope: the city of Dunedin, Florida and a 15 mile radius outside the Dunedin city limits; but the law of North Carolina will not allow either modification because the Court may not rewrite unreasonable covenants. Hartman, 450 S.E.2d at 917 (citing Beasley v. Banks, 368 S.E.2d 885, 886 (N.C. Ct. App. 1988)).[5]

These kind of factual conflicts and choice of law issues preclude a finding that Plaintiff is likely to succeed on the merits of Plaintiff's breach of Covenant Not to Compete claim.

### B. Covenant Not to Disclose

The Covenant Not to Disclose contained within the Agreement is vague and ambiguous. The provision is based on Defendant's knowledge and use of Plaintiff's "Confidential Information." (Dkt. 1 Ex. 1)  However, the Covenant Not to Disclose refers to a different document, an Employee Confidentiality Agreement, for the definition of "Confidential Information."  Defendant does not recall signing an Employee Confidentiality Agreement at the time he was hired (Dkt. 14 Ex. 1 at 5)

---

Defendant cites Welcome Wagon Int'l, Inc. v. Pender, 120 S.E.2d 739 (N.C. 1961), urging that even in North Carolina the Court may blue pencil the geographic restriction by eliminating all subparts except part i) and then construe the word "Territories" to mean sales territories. (Dkt. 25 at 8)  The Court is not convinced.  While Pender does allow a court to strike out clearly separable geographic subparts found unreasonable, 120 S.E.2d at 742, in that case the geographic divisions were separated by the word "or," id. at 740, indicating that the divisions were, in fact, distinct alternatives to one another.  In this case, the geographic restriction in the Covenant Not to Compete joins parts i) through vii) with the word "and," making each of the seven geographic restraints part of a unified whole, not separable.  If inseparable, then part (b) is unenforceable as overbroad under North Carolina law.

and the Employee Confidentiality Agreement is not of record in this case. Additionally, as previously explained, Defendant denies having access to or retaining any allegedly confidential or sensitive information related to Plaintiff's business. Plaintiff has not demonstrated a likelihood of success as to Plaintiff's breach of Covenant Not to Disclose claim.

### C. Covenant Not to Solicit

Based on the present record, Plaintiff is not likely to succeed on the merits of Plaintiff's breach of Covenant Not to Solicit claim either.[6] Protection of customer and employee relationships is a legitimate business interest, and a one year restriction on soliciting customers or inducing Plaintiff's employees to cease employment with Plaintiff is likely reasonable under Florida or North Carolina law. However, the same North Carolina law issue arises as to whether adequate consideration exists for the enforcement of the Covenant Not to Solicit.

Additionally, the Covenant Not to Solicit is ambiguous. The covenant states, "I agree that for a Time Period of 12 months after my employment at the Company ends, whether voluntary or involuntary, a) I will not solicit, interfere with, encourage or endeavor to cause any employee to cease his or her employment." It is not clear whether the "voluntary or involuntary" language applies to the manner in which the employment ended or to the means used to solicit employees. If the language applies to solicitation, it is not clear how one could involuntarily solicit a competitor's employee.

### D. Misappropriation of Trade Secrets

---

[6] Of all three covenants, the Covenant Not to Solicit presents a closer question, as it is undisputed that two of CarQuest's Dunedin employees left the employment of CarQuest and obtained employment with O'Reilly Auto Parts after Defendant left Plaintiff's employment. (Dkt. 20 Ex. 1 at 3) However, Defendant denies soliciting them (Dkt. 14 at 17) and Plaintiff shows no persuasive evidence of solicitation.

Plaintiff claims that Defendant misappropriated Plaintiff's confidential information and trade secrets in violation of the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001 et seq. (Dkt. 1 at 15) The elements of a misappropriation of trade secrets claim are: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy; and (2) the secret plaintiff possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1338 (M.D. Fla. 2006).[7] Plaintiff "bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998); see Fla. Stat. § 688.002(2). Secret information: 1) "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use;" and 2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Fla. Stat. § 688.002(4).

In this case, Plaintiff alleges that Defendant had access to Defendant's Key Account List, which stored the identity and purchasing history for Plaintiff's commercial customers in a password-protected database, and to Weblink, Plaintiff's password-protected system which allows business accounts/customers to access catalogues and place orders, and which provides pricing information for each specific customer. Plaintiff contends that it carefully maintains its confidential information and considers its Key Account List trade secret. (Dkt. 1 at 5-6)

Defendant, however, asserts that he was not aware of Plaintiff's "Key Accounts List" and

---

[7] North Carolina has adopted the Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152, et seq., which is substantially similar.

that the identities of Plaintiff's wholesale customers can be determined "by driving down the street or checking the yellow pages for automotive repair shops." Defendant also states that pricing in the automotive parts industry is dictated by customers who shop around the major competitors and settle on the best price, and that Defendant's understanding of the pricing practices of the automotive parts industry is not based on Plaintiff's particular prices on specific items, but on Defendant's experience in the industry over thirty years. Finally, Defendant argues Plaintiff did not take reasonable steps to keep its business information secret or confidential since Plaintiff failed to change Defendant's password at the Dunedin store for at least one to two weeks after Defendant's employment ended. (Dkt. 14 at 19-20)

Plaintiff has not satisfied its burden of persuasion regarding likelihood of succeeding on the merits of its misappropriation of trade secrets claim.

2. Irreparable Harm

Irreparable injury must be "neither remote nor speculative, but actual and imminent." Siegel v. LePore, 234 F.3d 1163, 1176-77 (11th Cir. 2000) (per curiam) (citation and internal quotation marks omitted). An injury is irreparable "if it cannot be undone by money damages." Cunningham v. Adams, 808 F.2d 815, 821 (11th Cir. 1987).

Multiple factors weigh against a finding of irreparable harm in this case. Defendant's current employment responsibilities may be similar to those he performed while employed by Plaintiff and may provide the opportunity for use of confidential information. However, whether Defendant has knowledge of or possesses Plaintiff's confidential information is still far from clear. While Defendant may end up having contact with Plaintiff's customers and employees, the harm to Plaintiff may be addressed by money damages. Additionally, the Agreement, if upheld, contains a tolling provision which extends the restrictive period by the amount of time the violation continued

and the time spent undertaking litigation to enforce the provision. (Dkt. 1 Ex. 1) Finally, though Plaintiff insists that Defendant began working for O'Reilly, a competitor, shortly after the end of Defendant's employment with Plaintiff on August 5, 2013 (Dkt. 3 at 7), Plaintiff waited until September 27, 2013, approximately eight weeks after Defendant's employment ended to file Plaintiff's Complaint (Dkt. 1) and Motion for Preliminary Injunction (Dkt. 3). These considerations weigh against a finding of irreparable harm. Accordingly, in view of this, it is unnecessary to address the other two requests for preliminary injunctive relief: the balance of harm and the public interest.

## Conclusion

Plaintiff has not demonstrated a likelihood of success on the merits of its claims or that it will suffer irreparable harm in the absence of an injunction. It is unnecessary to address the other requirements for injunctive relief.

Accordingly and upon consideration, it is hereby **ORDERED and ADJUDGED** that:

(1) Defendant's Motion to Strike Affidavit of Javier Acosta in Support of Plaintiff's Motion for Preliminary Injunction and Incorporated Memorandum of Law (Dkt. 21) is **DENIED**.

Additionally, it is **RECOMMENDED** that:

(1) Plaintiff's Motion for Preliminary Injunction and Incorporated Memorandum of Law (Dkt. 3) be **DENIED**.

**Date: December 6, 2013**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).